KOBE IMPORT CO. *v.* UNITED STATES (No. 4791) [1]

United States Court of Customs and Patent Appeals, May 25, 1955

*Jordan & Klingaman (Edward F. Jordan* of counsel) for appellant.

*Warren E. Burger,* Assistant Attorney General (*Richard E. FitzGibbon* and *Daniel I. Auster,* special attorneys, of counsel), for the United States.

[Oral argument April 6, 1955, by Mr. Jordan and Mr. Auster]

Before O'CONNELL, Acting Chief Judge, and JOHNSON, WORLEY, COLE, and JACKSON (retired), Associate Judges

COLE, Judge, delivered the opinion of the court:

We are concerned here with the dutiable value of certain glass chatons exported in eleven shipments from Shanghai, China, between March and October of 1941. Appraisement was made on the basis

of export value, section 402 (d) of the Tariff Act of 1930,[1] at values higher than those at which the importer entered the merchandise.

In proceedings before a single judge of the United States Customs Court, sitting in reappraisement, the importer contended that export value was represented by the unit prices appearing on the consular invoices. The single judge held that the evidence on behalf of the importer was not sufficient to overcome the presumption of correctness attaching to the appraised values. 26 Cust. Ct. 676, Reap. Dec. 7997. The judgment accordingly rendered was reviewed and affirmed by the Second Division of the Customs Court. 31 Cust. Ct. 456, A. R. D. 30.

The law governing appeals to this court in reappraisement proceedings is well established and may be briefly summarized as follows: We are bound by findings of fact made below whenever there is any substantial evidence to support such findings. Our concern is confined to such question or questions of law as may be presented. *United States* v. *Collin & Gissel (Ludwig Baer)*, 29 C. C. P. A. (Customs) 96, C. A. D. 176. There is a statutory presumption that the value found by the appraiser is correct. The burden upon a party attacking an appraised value is two-fold, i. e., to prove the action of the appraiser erroneous, and to establish some other dutiable value as the proper one. In other words, it is not incumbent upon the Government to prove that the appraised value is proper, until or unless the importer shows such appraisement to be erroneous and establishes a different value in place thereof. *Brooks Paper Company* v. *United States*, 40 C. C. P. A. (Customs) 38, C. A. D. 495, and *Kenneth Kittleson* v. *United States*, 40 C. C. P. A. (Customs) 85, C. A. D. 502, and cases cited therein.

Appellant's position here, framed in the light of the foregoing general principles, amounts to this: It does not dispute that export value is the proper basis for appraisement. It agrees that all findings of fact by the Customs Court are correct and fully supported by uncontradicted evidence. It contends, however, that the court below was in error in not concluding as a matter of law from such findings of fact that (1) the presumption of correctness attaching to the appraisement had been overcome, and (2) that the consular invoice unit prices represent the export value of the involved merchandise.

The lower court, in its opinion, ably presented the factual background giving rise to the litigation. It is sufficient for our purposes, however, to relate the facts in less comprehensive fashion as follows:

---

[1] Sec. 402 (d) Tariff Act of 1930:

EXPORT VALUE.—The export value of imported merchandise shall be the market value or the price, at the time of exportation of such merchandise to the United States, at which such or similar merchandise is freely offered for sale to all purchasers in the principal markets of the country from which exported, in the usual wholesale quantities and in the ordinary course of trade, for exportation to the United States, plus, when not included in such price, the cost of all containers and coverings of whatever nature, and all other costs, charges, and expenses incident to placing the merchandise in condition, packed ready for shipment to the United States.

Appellant, an importer of general merchandise, is a partnership composed of two brothers, Ralph and Louis Josephson. Ralph Josephson attended to the import business in New York while Louis had desk space in the office of the Eastern Undies Company in Shanghai, which company was operated by one Chen. It was appellant's customary trade practice for Louis to make purchases in the Shanghai market on instructions, orders, and money received from his brother in New York. Chen acted as an interpreter and buying and shipping agent for appellant. He had no other interest in appellant's business. The involved chatons were purchased by Louis in Shanghai, Chen being present. The goods were in a damaged condition, and were in broken or non-commercial assortments, which fact was known at the time to appellant.

It was stipulated between counsel for the respective parties that the appraiser, in valuing the merchandise, adopted the report of the examiner. At the trial, the examiner appeared as a witness for the Government. His testimony was summarized by the lower court as follows:

> Examiner Golub testified for the Government that immediately prior to the date of exportation of the first shipment here involved, he received an importation of similar merchandise from Shanghai "* * * which was invoiced, entered, and appraised at 82 cents per mass [100 dozen], per basic size. The basic size runs from 4 to 12, sizes after 12 were higher in price." Examiner Golub testified that the only other information he had as to the value of this merchandise was gained from a study of the correspondence between the shipper and the importer.

>     *        *        *        *        *        *        *

> It is clear to us from the testimony of Examiner Golub that the merchandise which he appraised shortly before the exportation of the involved merchandise, and upon which he testified he based his appraisement in the involved appeals, was regular merchandise in commercial assortments. The invoice in this previous shipment was not offered in evidence, nor is there any evidence to indicate that the merchandise covered thereby was freely offered for sale to all purchasers in the principal markets of China for export to the United States at the prices set forth therein, nor was there any evidence offered to explain the facts and circumstances connected with that invoice. * * *

The lower court thus found as a fact that the imported chatons, which were damaged and in broken and non-commercial assortments, were appraised on the basis of a single prior shipment of regular merchandise in commercial assortments, and some correspondence between Ralph and Louis Josephson.

In its efforts to prove the appraiser's action to be erroneous, appellant argued below, as it does now, that a price or market value differential existed between regular chatons in commercial assortments and damaged job lots of such chatons in broken assortments; that the unbalanced assortments and quality of the imported merchandise rendered it less valuable than the regular chatons; that nevertheless the appraised values for the instant merchandise were not only higher

than the entered values, but were also higher than those values found by the appraiser for the prior shipment of regular merchandise upon which he based the appraisement in issue; and that the appraiser was therefore in error in finding a statutory export value for the involved chatons predicated on values found for such regular chatons. Referring to the aforementioned correspondence between shipper and importer (which, as exhibits in the case, we have examined), appellant states (and we think correctly) that such correspondence could not have provided any foundation for the appraiser's valuation since it related to many different phases of appellant's business, and to the several classes of merchandise in which it was interested, and did not with any degree of particularity identify any of the instant shipments.

However erroneous the appraiser's action may have been in valuing the merchandise, it was incumbent upon appellant seeking to prove the correctness of a different statutory export value to meet every material issue in the case, and hence establish every element of that value in strict compliance with the dictates of section 402 (d), *supra.* Failing to sustain this burden of proof, the value fixed by the appraiser remains in full force and effect.

As indicated, appellant contends that the prices shown on the consular invoices represent the correct export and dutiable value of the imported goods. Witnesses appearing at the trial on behalf of appellant testified without contradiction that these prices were those actually paid for the merchandise. The affidavit of Chen, appellant's buying and shipping agent, was also received in evidence in support of appellant's position. The lower court, in affirming the judgment of the trial judge sustaining the appraiser's valuation, reviewed the evidence in the case, considered appellant's arguments with respect thereto, and concluded as follows:

Should we accept as correct the contention of counsel for appellant that the proper dutiable value of merchandise is the price actually paid by the purchaser, this would render meaningless most, if not all, the provisions of section 402 of the Tariff Act of 1930. This we decline to do.

While it is true that the evidence indicates that these chatons were purchased as job lots, and the record establishes that they were in a damaged condition, and in broken or non-commercial assortments, yet it is equally true that the evidence fails to establish any price at which job lots, damaged chatons, and chatons in broken or non-commercial assortments, or merchandise similar thereto, was freely offered for sale to all purchasers in the principal markets of China, in the usual wholesale quantities and in the ordinary course of trade, for exportation to the United States. This being true, it is clear that appellant has failed to meet by proof the material issue in this case.

We agree with the court below that appellant has not shown, by sufficiently competent evidence, the existence of a statutory export value different from that found by the appraiser. Taking into consideration the fact that the involved merchandise was purchased by appellant in job lots, and was commercially inferior to regular chatons

in balanced assortments, it is nevertheless clear that an invoice cannot of itself establish the statutory elements necessary to constitute export value. The price stated in such invoice may or may not be in conformity with that valuation contemplated by the statute. It is a matter of proof and not of suspicion. *United States v. Manahan Chemical Co., Inc.*, 24 C. C. P. A. (Customs) 53, T. D. 48333; *Sears, Roebuck & Co. et al. v. United States*, 31 C. C. P. A. (Customs) 36, C. A. D. 246; *H. S. Dorf & Co., Inc., et al. v. United States*, 41 C. C. P. A. (Customs) 183, C. A. D. 548. The affidavit of Chen is cited by appellant as evidence establishing that the consular invoice prices truly reflect the correct export value of the imported chatons, and should be adopted by us. Referring to the involved shipments, the affiant stated:

\* \* \* \* \* \* \*

2. That in his capacity as a buying and shipping agent throughout the aforesaid period including the years 1940 and 1941 up to the outbreak of the war between Japan and the United States he attended to the purchase and shipping of various articles of merchandise including glass lenses, chatons, imitation pearls and cultivated pearls for buyers for export to the United States and elsewhere and for domestic consumption or use in China; and that, as a necessary part of his business, he was familiar throughout the aforesaid period with wholesale market conditions in Shanghai, China, including prices at which the aforesaid kinds of merchandise were being quoted and offered for sale and the range of quantities in which they were ordinarily sold.

3. That he is personally familiar with the facts as to the purchase and shipment of the shipments enumerated in the annexed schedule, from Shanghai to Kobe Import Co. of New York, N. Y., U. S. A., including those invoiced by Kobe Import Co. of Shanghai, China, except that the court numbers are stated on information and belief.

\* \* \* \* \* \* \*

6. That the aforesaid purchases were in each instance made under open market conditions and without any special arrangement as to price between the buyer and the seller and without any special consideration being given to the buyer.

7. That the prices at which the said merchandise was purchased were the prices on or about the above-mentioned dates of exportation at which the above-mentioned sellers and others in the Shanghai market were freely offering to sell such and similar merchandise to all purchasers in the usual wholesale quantities and in the ordinary course of trade for export to the United States and for home consumption in China, and that the quantities covered by the above-mentioned purchases were the usual or ordinary wholesale quantities of such or similar merchandise being offered for sale and sold in Shanghai at or about said dates of exportation for export to the United States and for home consumption in China.

Appellant's right to introduce evidence by means of affidavit cannot be questioned. It is expressly given to him by statute. 19 U. S. C. 1501; 28 U. S. C. 2633. The fact that the evidence in question was introduced by affidavit does not, however, affect the substantive issue of whether the statements therein appearing constitute substantial evidence of the ultimate facts sought to be proved thereby. *Brooks Paper Co. v. United States, supra.*

The affidavit by Chen was first introduced in a companion suit between the instant litigants wherein a similar issue to that involved here was before the court. The merchandise enumerated in the affidavit, however, not only covered that in the referred to case but also the chatons in the instant case. When the appellant sought to introduce the affidavit in these proceedings, Government counsel objected to its competency and relevancy and to its materiality as to statements based upon conclusions of fact. The trial judge overruled the objection, but later, in his opinion, declined to consider it because he believed Chen was incompetent to give the testimony. The opinion by the appellate division, which is directly before us, discusses the affidavit at considerable length, disagreeing with the trial judge as to the competency of the affiant to make the statements found in the affidavit. While the lower court thus decided to consider the affidavit, it attached little, if any, importance to the content thereof and so stated. The ruling by the trial court in admitting the affidavit in evidence is not before us for review in this appeal.

The appellant here has sought to prove by Chen's affidavit that the price shown on the consular invoice for the involved merchandise was, *inter alia*, the price at which such or similar merchandise was freely offered for sale to all purchasers in the principal market in the usual wholesale quantities and in the ordinary course of trade. That the affidavit, which is couched in the exact terms of the export value statute, is not sufficient for this purpose is clear from our ruling in the *Brooks* case, *supra*, where in discussing at considerable length the evidentiary record therein introduced by affidavits, similar to the course followed in the instant appeal, we said:

* * * "Evidentiary facts" must be found from the testimony or other evidence. "Ultimate facts" are reasoned conclusions drawn from the evidentiary facts. *Commissioner of Internal Revenue* v. *Sharp et al.*, 91 F. (2d) 804, C. C. A. 3. Considered with reference to the facts or evidence by which they are established or proved, "ultimate facts" are but the logical results of the proofs, or, in other words, mere conclusions of fact reached by the processes of logical reasoning from the evidentiary facts. * * *

The Supreme Court has defined "substantial evidence" as evidence affording a substantial basis of fact from which the fact in issue can be reasonably inferred. Substantial evidence, said the Court further, is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion, and it must be enough to justify, if the trial were to a jury, a refusal to direct a verdict when the conclusion sought to be drawn from it is one of fact for the jury. *National Labor Relations Board* v. *Columbian Enameling & Stamping Co.*, 306 U. S. 292.

Under this test of substantial evidence we think it clear that a mere declaration of an essential ultimate fact in issue is not substantial evidence. * * * it seems clear that ultimate facts cannot at the same time also be the facts which afford a substantial basis of fact from which the fact in issue can be reasonably inferred. * * *

In view of the foregoing discussion, it seems to us an inescapable conclusion that affiant's statements pertaining to the question of usual wholesale quantities are

merely statements of a vital issuable fact and hence only a declaration of an essential ultimate fact.  * * *

We think, therefore, in the light of the foregoing holding in the *Brooks* case, *supra*, that Chen's affidavit is not properly supported by evidentiary facts.  On the contrary, the statements made therein are merely statements of vital issuable facts and thus merely declarations of essential ultimate facts.  See also *United States* v. *Fisher Scientific Company*, 40 C. C. P. A. (Customs) 164, C. A. D. 513.

Two technical objections were raised by the Government to the jurisdiction of this court to entertain the appeal, neither being argued in appellee's brief.  First, it is claimed that the petition addressed to this court was for a review of the decision of the United States Customs Court and not from the judgment.  Second, it is claimed and argued for with considerable emphasis that the principal attack upon the appraisement was because of what the examiner did, without any reference to the appraiser's action whatever; in other words, that the Government in calling the examiner as a witness and presenting his testimony as to how the appraisement was arrived at completely ignored the appraiser himself, and that, therefore, what was done by the appraiser was unimpeached.

Neither of these objections has the slightest merit.  The petition for review herein states that "Your petitioners, being dissatisfied with the decision of the United States Customs Court * * * respectfully pray your Court to review the questions of law and fact involved in such decision and for such relief in the premises as to the Court shall seem just."  While it might have been better to have used the word "judgment" in the petition, and in the assignment of error, we do not believe there is sufficient reason for that to be done, or sufficient failure where it is not done, to deny the appellant its right of review by this court.  Counsel for the Government in his argument cited the case of *Winter Bros.* v. *United States*, 19 C. C. P. A. (Customs) 113, T. D. 45245, as supporting its position.  That case restated the well settled law "that if the court below came to a correct conclusion and rendered a correct judgment, its judgment will not be reversed because of the method of reasoning which may have induced such judgment.  It is the judgment of the court which is appealed from, and not its decision or opinion."  The Tariff Act of 1930, in the portion dealing with the administration thereof, is conspicuously silent as to reviews of the Custom Court being of the judgment orders or of any other particular uniform type of procedure.  One can read the law in a most casual way to be persuaded in this instance that an appeal from the action of the Customs Court to this court is for a review of the decision rendered and such is sufficient for the same to be entertained.  Of course, the final action of this court is addressed to the final action of the Customs Court, i. e., the decision and judgment entered therein.

As to the second point raised by the Government about the alleged failure of the importer to address any testimony to the appraiser's action, as distinguished from the examiner, we are satisfied after studying the record that Government counsel overlooked the stipulation filed on November 10, 1948, after the testimony had been taken, and the case submitted, this stipulation being to the effect that the submission theretofore entered be set aside and "In each of the invoices and entries covered by said appeals the appraiser adopted the report of the examiner." This was quite sufficient to overcome any objections that we feel, somewhat remotely, might have been presented without such a stipulation.

For the reasons hereinbefore stated, the judgment of the United States Customs Court is *affirmed*.

JACKSON, J., retired, recalled to participate herein in place of GARRETT, C. J.

WORLEY, J., dissents.