The UNITED STATES, Appellant,

v.

CLAYTON CHEMICAL & PACKAGING CO., Appellee.

Customs Appeal No. 5186.

United States Court of Customs and Patent Appeals.

June 24, 1965.

Smith, J., and Rich, Acting C. J., dissented.

John W. Douglas, Asst. Atty. Gen., Andrew P. Vance, Chief, Customs Section, James S. O'Kelly, New York City, for appellant.

J. Joseph McDermott, Brooks & Brooks, New York City, for appellee.

Before RICH, Acting Chief Judge, and MARTIN, SMITH and ALMOND, Judges.

ALMOND, Judge.

The United States, hereinafter appellant, appeals from the decision and judgment of the United States Customs Court, Second Division, Appellate Term, 52 Cust.Ct. 620, A.R.D. 169, affirming the decision of the trial court,[1] wherein it was held in substance that the sales of the involved merchandise in small quantities were for experimental and testing purposes, and thus not in the ordinary course of trade. In determining the dutiable value, the court disregarded such sales.

The merchandise involved is PHENIDONE, a coal tar product used in photography. PHENIDONE was exported from England between July 1, 1953 and February 10, 1964. It was appraised on the basis of United States value as that value is defined in section 402(e) of the Tariff Act of 1930, as amended. The parties have stipulated that United States value was the correct basis for appraisement. The issue here relates to the correct amount or amounts which represent said value. The value found by the appraiser ranged from $15.87 per pound to $24.11 per pound. Clayton Chemical and Packaging Co., hereinafter appellee, contends that the correct dutiable value of the merchandise involved is $6.929, as found by the Customs Court, and that such value is amply sustained by the weight of substantial and competent evidence.

At the trial, appellee introduced Exhibits 7 through 20 comprising affidavits of persons resident in the United States who purchased PHENIDONE from appellee. Appellant contends that these affidavits were received in evidence over the timely objection of appellant and that the Second Division erroneously affirmed the admissibility of same and relied in

1. 49 Cust.Ct. 409 Reap.Dec. 10347.

great measure on the statements contained therein in determining the value of the merchandise involved.

Two issues are, therefore, presented:

1. Were Exhibits 7 through 20 properly admitted in evidence under the circumstances disclosed by the record?

2. Was there substantial evidence of record to sustain the finding of the court below that the United States value of the imported merchandise was $6.929 per pound?

The statutes involved are:

Section 402(e) of the Tariff Act of 1930, as amended by the Customs Administrative Act of 1938 (52 Stat. 1081), and Section 2633 of Title 28 of the United States Code.

Section 402(e) defines United States value and, in material essence, provides that the "value of imported merchandise shall be the price at which such * * * is freely offered for sale * * * to all purchasers, at the time of exportation * * *, in the usual wholesale quantities, and in the ordinary course of trade * * *" with certain stated allowances.

Section 2633 of Title 28 of the United States Code provides:

In finding the value of merchandise, in reappraisement proceedings before a single judge of the Customs Court, affidavits and depositions of persons whose attendance cannot reasonably be had, price lists and catalogues, reports or depositions of consuls, customs agents, collectors, appraisers, assistant appraisers, examiners, and other officers of the Government may be admitted in evidence. Copies of official documents, when certified by an official duly authorized by the Secretary of the Treasury, may be admitted in evidence with the same force and effect as original documents.

The value found by the appraiser shall be presumed to be the value of the merchandise. The burden shall rest upon the party who challenges its correctness to prove otherwise. * * *

Relative to its disposition of the issue raised by appellant concerning the affidavits (Exhibits 7 through 20), the Customs Court said:

Based upon the record herein, we find no merit to this assignment. Counsel for appellant strenuously argues that the record is replete with objections as to the admissibility of plaintiff's exhibits 7 through 20. It is also contended that while counsel for the Government made no objection at the time of their receipt in evidence, it related only to the form and not to their admissibility. This latter contention is not supported by the record or the conduct of counsel after the exhibits were actually received and marked in evidence. If counsel * * * was still of the opinion that the exhibits were not admissible, after the trial judge received them, a statement to that effect should have been made or an exception taken. Neither course was followed in this case. Accordingly, the court may and is, [in] fact required to consider these exhibits.

The court below found the fact of record to be substantially as follows:

PHENIDONE had not appeared on the United States market prior to January 1953. Appellee used the imported substance in the manufacture of several of its products and offered it for sale to anyone wishing to buy. By virtue of agreement with the foreign manufacturer and exporter, appellee became the exclusive American importer of PHENIDONE. The product being new on the market appellee deemed it necessary to promote it by contacting likely consumers and by disseminating information concerning its nature and availability. Appellee's Exhibit 1 was representative of letters sent to possible users soliciting them to "send your order for a sample quantity of Phenidone * * *." In pursuance of its efforts to attract orders for the product, appellee offered it in quantities as small as 1 ounce.

Appellee introduced as Exhibit 2 a list of sales made during the period from June 19, 1953 to January 27, 1954. It appeared that of the 49 sales made during that period 13 were in quantities of 1

ounce, and all but 8 were in quantities of 5 pounds or less. Thirty-five persons or firms were involved in these 49 purchases, to whom, at the time of litigation, appellee sent affidavit forms with blank portions to be filled in by affiant stating the disposition of the PHENIDONE which had been purchased.

The court below found that 14 of these affidavits (Exhibits 7 through 20) were executed by purchasers, returned and received in evidence and that three witnesses testified in person concerning the disposition made of the merchandise by four of the purchasers. On the basis of the above factual statement, the court found that "there is evidence as to the disposition made by 18 of 35 persons or firms who purchased" the merchandise from appellee during the period in question. These 18 persons or firms represent the purchasers in 30 sales.

The court also found that the product involved in 15 of these 30 sales was wholly used for experimental or testing purposes; in 6, it was used partly for experimental and partly for other purposes; in 1, it was used partly by the purchaser in preparation of photographic developers for its own use and partly sold to others without change; in 1, it was resold as purchased; and, in 7, it was used by the purchaser for its own purposes. The 7 sales were in quantities of 100 pounds or more at the price of $11.90 per pound which appellee contends represents the United States selling price.

The parties agreed that 21 cents per pound represents the proper amount for the allowance of cost of transportation, insurance, and other necessary expenses specified in the statute. The trial court concluded that sales in quantities of less than 100 pounds were not made in the ordinary course of trade and based upon the facts recited above and the agreement of the parties that the basis of appraisement is United States value, as defined in section 402(e), found said value to be $6.929.

Predicated on the facts as above stated, the Customs Court concluded that:

We are in agreement with the trial court that sales of 5 pounds or less, under circumstances such as are involved here, were not made in the ordinary course of trade. As indicated in United States v. H. Muelstein & Co., 42 Cust.Ct. 760, A.R.D. 106, where small quantities are sold for testing purposes, it is reasonable to infer that said sales are not made in the ordinary course of trade. The import of the phrase, "ordinary course of trade," as used in section 402(e), supra, suggests buying and selling for use or resale. Sales for testing or experimental purposes are, therefore, outside the scope of such phrase. The 8 remaining sales cover 1 sale of 25 pounds at a price of $13.90 per pound, and 7 sales of 100 pounds or more at a price of $11.90 per pound. Under the "major portion of sales" rule, as enunciated in F. S. Whelan & Sons v. United States, 39 CCPA 168, C.A.D. 482, and cases cited therein, the usual wholesale quantity applicable to the merchandise involved herein woud be 100 pounds or more.

The threshold question here presented involves the propriety of the admission in evidence of the affidavits of persons residing in the United States. It therefore becomes necessary to review and analyze the facts of record relating to the introduction and admission of these affidavits.

Plaintiff-appellee initially offered the affidavits in evidence at the first hearing of this case before the late Judge Mollison. The objection of government counsel to their admissibility was sustained. The following colloquy ensued:

Mr. Stramiello: I offer them in evidence, your Honor.

Mr. Spector: That's objected to, your Honor, on several grounds. In the first place, * * * they are affidavits obtained seven years after the importation. They're composed of persons whose attendance can reasonably be had. * * *

Judge Mollison: * * * I don't think this is a type of affidavit nor the

use of which is contemplated by the statute. The objection is sustained.

Immediately preceding formal offer of the affidavits in evidence, counsel for appellee sought to identify their origin and purpose. Counsel stated that they were offered for the purpose of showing that "in practically every instance" the material purchased by the affiant-purchasers was in quantities less than that asserted to be wholesale quantities and that the PHENIDONE "was used for experimental and testing purposes * * *." Counsel for the government raised the objection as to the materiality of the purported showing of the content of the proof embraced thereby and that the attendance of the affiants could reasonably be had. In this connection the record reveals the following:

Judge Mollison: Well, I don't know that the statute covers an affidavit for proof of this sort of thing.

Mr. Stramiello: It doesn't state what the affidavits are for.

Mr. Spector: These people are in Chicago.

Judge Mollison: These people can be produced. * * * the attendance of these people could be reasonably had.

Mr. Stramiello: Where has that been shown, your Honor?

Judge Mollison: Well, it's been shown they are firms in the United States. You have contact with these people.

* * * * * *

Mr. Stramiello: It is my understanding in a reappraisement case affidavits are admissible.

Judge Mollison: Not all affidavits.

Mr. Spector: Only where a witness whose attendance cannot be reasonably obtained. * * *

Mr. Stramiello: I would take it that if the statute said that to produce 35 purchasers, some of whom bought this in one ounce lots, certainly it would not be reasonable to obtain them, and that's why I think affidavits would be admissible in this case too.

Mr. Spector: Here it is in plain language. "In finding such value, affidavits or depositions of persons whose attendance cannot be reasonably had."

Thus far there can be no doubt that timely and persistent objection was made by counsel for the government to the admission of the affidavits in evidence. It is equally clear that in sustaining the objection, the trial court applied the provisions of section 2633 of Title 28 of the United States Code. In so applying the statute, the court made the determination that the affiants resided in the United States and that their attendance before the court could reasonably have been had.

For reasons appearing of record, the hearing at which the above events occurred was recessed and resumed at a later date. Upon resumption of the hearings, the affidavits were again offered in evidence. Counsel for the government renewed the objection previously made and sustained. The trial court, however, overruled this objection, whereupon the following colloquy ensued:

Mr. Grossman: May I call the court's attention to the fact that the precise question was asked at the earlier hearing. At that time the court sustained the objection.

Judge Mollison: It might have had different reasons for sustaining it. *Now we have a different situation.* First we had a long and lengthy conference in chambers about the matter of proof, and *for various reasons,* the court now permits it. Objection overruled. [Emphasis supplied.]

We are unable to perceive any fact or circumstance of record indicative of a "different situation" from that which obtained previously when the objection to the admission of the affidavits was sustained. Neither does the record reveal what transpired at the conference in chambers nor any of the "various reasons" upon which the court predicated its change of opinion.

The crucial aspect upon which counsel for appellee so strongly relies is reflected by the following:

Mr. Stramiello: In offering 14 of these 17 affidavits into evidence, the three which I am not offering are being deleted because the purchasers involved * * * have had the circumstances of their purchases described by testimony here today.

I offer these 14 affidavits in evidence * * * on the basis that * * * the presence of the affiants could not reasonably be had * * * since they are located more than 100 miles from the place of hearing, and * * * in many diverse places throughout the United States, and I make that contention on the basis of the provision numbered 18–a of the rules of this court, subdivision (d) (1), which permits the service * * * within a distance of 100 miles of the place of hearing, and under special circumstances, the court may * * * permit service * * * beyond that distance.

Judge Mollison: I take it you make it also upon the basis of the provisions in the statute?

Mr. Stramiello: Yes, Your Honor.

Mr. Grossman: The Government objects to the offer of these affidavits in evidence; first, on the grounds most of these witnesses apparently are reasonably available. Plaintiff's own exhibit indicates that at least 6 or 7 of these people are within 200 or 300 miles of the court. Furthermore, *I haven't even had an opportunity to see these affidavits * * *.* [Emphasis supplied.]

Judge Mollison: Is that your main objection?

Mr. Grossman: My main objection is they are not such affidavits as were intended by the rules of this court to be admissible in evidence.

Judge Mollison: Under the circumstances, the court believes the affidavits are admissible under the statute and under the rules of the court.

Pass the affidavits over.

*Are they duly executed * * * being signed by the affiant, and * * before some person authorized by law to take acknowledgements?* [Emphasis supplied.]

Mr. Stramiello: That is so.

Judge Mollison: Does all that appear on the face of them?

Mr. Stramiello: Yes.

Judge Mollison: Do you have any objection to the exhibits?

Mr. Grossman: There is no objection.

Appellee here contends that the affidavits, in issue, of persons residing in the United States, whose attendance, it is asserted, could not have been reasonably had, were properly received in evidence "when no objection was made thereto" by counsel for appellant. In essence, it is contended that counsel waived objection in making the statement "no objection" as above recounted, in the incidents of the hearings before the trial judge. It appears that it is upon this basis that the Customs Court sustained the admission of the affidavits by the trial court.

The record abundantly supports the conclusion that counsel for appellant made timely, repeated and persistent objections with clear and concise statements of the grounds therefor. The record affords no basis for conjecture or misapprehension on the part of counsel for appellee or the trial judge as to appellant's unvarying position relevant to these affidavits.

It is pertinent to here point out that the trial court in reversing its former ruling had flatly and finally overruled counsel's objection and thereupon directed "Pass the affidavits over." The record supports no other rational conclusion than that the affidavits were then and there admitted in evidence provided they had been duly executed. The sole inquiry thereafter was directed by the court to counsel for both parties not as to the substance of the affidavits but as to their formal execution. It is also significant that up to this point counsel for

the government had not "had an opportunity to see these affidavits," and upon assurance as to their due and formal execution responded thereto with "There is no objection."

Trial counsel for the government filed his affidavit in support of the government's motion for a rehearing setting forth his version and interpretation of the incident of the hearing relating to the admission of the affidavits in evidence. Suffice it to say, while this affidavit augments and supports the conclusion which we have reached, we do not deem it necessary to rely thereon.

We do not agree with the Customs Court that, under the circumstances here disclosed, it was incumbent upon counsel for appellant to register further objection after the trial court had received the exhibits or take a formal exception thereto. The conduct of counsel was, in our opinion, in full compliance with Rule 36 of the United States Customs Court:

Formal exceptions to rulings or orders of the court are unnecessary; but for all purposes for which an exception has heretofore been necessary it is sufficient that a party, at the time the ruling or order of the court is made or sought, makes known to the court the action which he desires the court to take or his objection to the action of the court and his grounds therefor; and, if a party has no opportunity to object to a ruling or order at the time it is made, the absence of an objection does not thereafter prejudice him.

Our determination that objection to the admission of the affidavits in issue was timely made and not thereafter waived by conduct of counsel, as indicated by the Customs Court, poses the further question of whether the affidavits were properly admitted in evidence under the provisions of 28 U.S.C. § 2633.

The Customs Court felt that it was required "to consider these exhibits" and it relied thereon in affirmance of the decision of the trial court.

Appellant contends that 28 U.S.C. § 2633 was not intended to permit the substitution of affidavits of persons residing in the United States for oral testimony and thereby deprive opposing counsel of the right to have confrontation of adverse witness and the right of cross-examination. We do not believe that the statute in its present form can be properly limited to such a narrow construction.

The right to use affidavits in reappraisement trials first appeared in the Tariff Act of 1913 as section 3(M), which provided in part:

Affidavits of persons whose attendance *cannot be procured* may be admitted in the discretion of the general appraiser or Board of General Appraisers. [Emphasis supplied.]

Hearings on H. R. 3321 before the Senate Finance Committee, 63d Cong., 1st Sess. 2188 (1913) reflect the cautionary attitude of the Congress with respect to the above provision. It was observed that:

The provision in the House bill is the same as in the Payne-Aldrich Act, in which it appeared as a new provision. It reads more like a heritage from the Middle Ages. Where any fact is in issue the best method of determining it is the law of evidence, which is the result of ages of experience.

\* \* \* \* \* \*

It is somewhat questionable whether the amendment herein proposed does not go too far in permitting the use of ex parte affidavits in the discretion of the general appraiser or board, but as the desired evidence is frequently nonexistent in the United States, and according to the regular law all foreign evidence would have to be taken by deposition at any rate, and, as depositions are not a very satisfactory method of taking testimony, \* \* \* it is thought best, in the interests of prompt procedure, to permit the use of ex parte affidavits, provided they be presented and scrutinized in public hearings.

It appears manifest from the above expression of congressional intendment

and purpose that authorization of the use of affidavits was originally a creature of necessity limited to situations requiring information as to values in foreign countries where affiants were beyond the jurisdiction of the American tribunal. The language of the original statute limiting its application to "persons whose attendance cannot be produced" clearly supports such a construction. The present statute (section 2633) is not so limited but has been broadened in the scope of its reach to embrace persons "whose attendance cannot reasonably be had" irrespective of their residence. Whether or not attendance may reasonably be had is a factual matter to be determined by the court, when and before which the issue is properly raised. We think the issue was so raised in the instant case where the affiants were subject to the process of the Customs Court.

We are in accord with the reasoning applied to United States v. Hensel, Bruckman & Lorbacher, Inc., 2 Cust.Ct. 846, Reap.Dec. 4523, which was on rehearing and reversal of its prior ruling reported in 1 Cust.Ct. 591, Reap.Dec. 4376. Referring to the language of its previous decision, the court on rehearing stated:

> There we stated * * * that the admission of affidavits was within the discretion of the trial court and the weight to be accorded such evidence is for the trial court to determine. We do not desire that statement to be construed as holding that affidavits should be admitted simply upon offer made and that upon appeal the division may not consider whether or not their admission or exclusion by the trial court was error. * * *
>
> * * * * *
>
> The language [28 USC 2633] is plain that affidavits may be admitted of persons whose attendance cannot reasonably be had. It is our opinion that, when timely objection is made to the admissibility thereof upon the ground that the attendance of the affiants might be had in court, such objection should be sustained unless and until a proper showing is made upon the part

of the party offering the affidavits that the attendance at the trial of the persons executing the same cannot reasonably be had. In the event of such a showing being offered or made, it is for the court to determine whether they are to be admitted or excluded.

> Here timely objection was taken to the admission of the affidavits upon said grounds and no offer or showing was made that attendance could not reasonably be had. Under such conditions the trial court should have excluded the affidavits. * * *

Appellee contends that its Exhibit 3 which sets forth the distances of the affiants from the place of trial, Chicago, was a sufficient showing that the presence of such affiants could not reasonably be had.

In response we note the statement in appellant's brief that:

> * * * appellant should have been given the opportunity to confront these affiants through the deposition procedure. Nine of the fourteen affiants were residents of New York or New Jersey and, on the face of it, their oral testimony at a trial or pre-trial session of the Customs Court could easily have been arranged with little inconvenience to all concerned, appellee's trial counsel at the time being himself a New York attorney.

We are not persuaded from the facts and circumstances here adduced that appellee has made a proper showing, as was incumbent upon it so to do, that the attendance of the persons executing the affidavits in issue could not reasonably have been had. Mere inconvenience of litigants or witnesses should not suffice to deprive an adversary in litigation of the substantial and time honored right of confronting and cross-examining witnesses of the opposing party.

We hold, therefore, that the affidavits (Exhibits 7 through 20) were erroneously admitted in evidence over the timely objection of counsel for appellant.

As has been noted, the trial court and the appellate court relied in substantial

measure on the statements contained in the affidavits in determining the value of the subject merchandise. Counsel for appellee in argument before us admitted that he must rely on the affidavits to sustain appellee's contention that the usual wholesale quantities applicable to the merchandise involved would be 100 pounds or more. In other words, that sales of 5 pounds or less were not, as held by the Customs Court, in the ordinary course of trade.

Appellant contends that with exclusion of the affidavits there is no substantial competent evidence of record to rebut the statutory presumption that the United States value of the imported merchandise was the value found by the appraiser. One ounce was the quantity found by the appraiser to be the usual wholesale quantity, and was the quantity upon which he predicated his finding of the United States value of the merchandise.

It is incumbent upon the appellee to overcome the statutory presumption that the value found by the appraiser is presumed to be correct. As stated by this court in Kobe Import Co. v. United States, 42 C.C.P.A. 194, C.A.D. 593:

> The burden upon a party attacking an appraised value is two-fold, i. e., to prove the action of the appraiser erroneous, and to establish some other dutiable value as the proper one. In other words, it is not incumbent upon the Government to prove that the appraised value is proper, until or unless the importer shows such appraisement to be erroneous and establishes a different value in place thereof. Brooks Paper Company v. United States, 40 C.C.P.A. (Customs) 38, C.A.D. 495, and Kenneth Kittleson v. United States, 40 C.C.P.A. (Customs) 85, C. A.D. 502, and cases cited therein.

The record establishes that appellee circulated a letter to the trade in an effort to create a market for PHENI-DONE. Appellee's general manager, Rautboard, testified that this letter was sent in the main to manufacturers of photographic solutions and to some who "were large users of photographic devel-opers." He further testified that "We had immediate delivery available to anybody wishing to buy * * *." The sales were listed and the purchasers were firms that buy in wholesale quantities for their own use and for resale. The sales in quantities of five pounds or less and in one ounce quantities were frequent and in considerable number. Of approximately 35 different purchasing firms listed, 12 firms purchased in one ounce quantities, one making two purchases in that amount. The frequency and consistency of these purchases would tend to indicate that sales of five pounds or less were in the ordinary course of trade. The list of sales discloses that 49 sales were made in quantities varying from one ounce to 200 pounds. The quantity in which the greatest number of sales were made was one ounce, there being 13 sales in that quantity purchased at $29.28 per pound. We find substantial evidence to support the conclusion that sales in one ounce quantities were the usual wholesale quantity.

We find persuasive and possessive of merit, under the facts here disclosed, appellant's argument that the major portion, or greatest number of sales or offers for sale in a wholesale quantity constitute the usual wholesale quantity. We think that all sales in the ordinary course of trade, when such sales are in wholesale quantities, must be considered. Jenkins Brothers v. United States, 25 C.C.P.A. 90, T.D. 49093; United States v. Semon Bache & Co., 25 C.C.P.A. 387, T.D. 49466; Adolph Goldmark & Sons Corp. v. United States, 22 C.C.P.A. 358, T.D. 47378; United States v. G. Gennert, Inc., 22 C.C.P.A. 374, T.D. 47388.

Appellee relies heavily on United States v. H. Muehlstein & Co., 42 Cust. Ct. 760, A.R.D. 106, cited by the Customs Court, herein, in support of the proposition that sales in small quantities for testing purposes were not sales in the ordinary course of trade. It should be noted that the court below applied the principle enunciated in Muehlstein in reliance upon appellee's Exhibits 7 through 20 to exclude sales in small quantities

when finding the usual wholesale quantity. The affidavits embraced by Exhibits 7 through 20 are no longer before us. It is observed, however, that in *Muehlstein* there was a total of 235 sales. Only three sales were in small quantities, which the court considered fugitive or sporadic. In the instant case there were 49 sales, only seven of which were considered by the court below in determining the usual wholesale quantity applicable to the merchandise involved herein. It would be most difficult to reconcile with reason a conclusion that 42 out of 49 sales, under the state of the record before us, were fugitive or sporadic and therefore not in the ordinary course of trade.

For the reasons stated, we are of the opinion that there is no substantial competent evidence of record to sustain the lower court's finding that the usual wholesale quantities of the subject merchandise were in quantities of 100 pounds or more and that the court below committed error in its refusal to consider the sales in quantities of five pounds and less in determining the usual wholesale quantity of the imported merchandise.

The judgment of the Customs Court is reversed.

Reversed.

WORLEY, Chief Judge, concurs in the result.

WORLEY, Chief Judge, did not sit but is participating by agreement of counsel.

SMITH, Judge (dissenting, with whom RICH, Judge, joins).

In respectfully disagreeing with the majority, I do so because I think the affidavits embraced by exhibits 7 through 20 are properly before us and that they support the findings of the Customs Court.

My reason for thinking the said affidavits are before us is that they were admitted by the trial court, after objection and a full discussion as to their admissibility. Unfortunately for present purposes, the record here does not disclose the details of what transpired between the time when the affidavits were first excluded and the point at which the trial court reversed its earlier ruling and admitted them. We do know from the portions of the record quoted by the majority that conferences concerning the admissibility of these affidavits were held in chambers, and apparently as a result, the trial judge changed his ruling.

The provisions of 28 U.S.C. § 2633 seem to me to vest a substantial discretion in the trial court as to whether affidavits and depositions may be received in lieu of oral testimony. The statutory provision permits them where attendance of the witness "cannot reasonably be had." See Glanson Co. v. United States, 41 Cust.Ct. 510, Reap.Dec. 9208. There is no question but that in *originally* ruling as he did, the trial judge in effect held that the testimony of the witnesses *could* reasonably be had. His discretion in subsequently changing this ruling is not properly subject for review unless it be shown that there was an abuse of the power. Judge Mollison's statement upon admitting the affidavits is clear, and in the absence of proof that he had acted unreasonably in exercising the discretion vested in him by the statute, I think we are obligated to consider this appeal on the record with the affidavits before us. I find nothing arbitrary nor otherwise unreasonable in Judge Mollison's statement as to why he had changed his mind and had decided to admit the affidavits in evidence. The record shows the following:

Mr. Grossman: May I call the court's attention to the fact that the precise question was asked at the earlier hearing. At that time the court sustained the objection.

Judge Mollison: It might have had different reasons for sustaining it. *Now we have a different situation.* First we had a long and lengthy conference in chambers about the matter of proof, and *for various reasons*, the court now permits it. Objection overruled. [Emphasis added.]

There has been no showing that the trial judge was clearly erroneous in finding, as he must have found, that attendance of the witnesses could *not* reasonably be had. We are therefore obliged to accept such finding as fact.

Another factor which has influenced my view regarding this case involves the pertinent provision of the Tariff Act of 1930, section 402(e). Since the goods were imported in 1953–54, we must consider section 402(e) as it read at that time, without regard to the subsequent amendment of it by the Customs Simplification Act of 1956. Thus in 1954, section 402(e) (as amended by the Customs Administrative Act of 1938, 52 Stat. 1081) provided in pertinent part:

> Sec. 402(e) *United States Value.* The United States value of imported merchandise shall be the price at which such or similar merchandise is freely *offered* for sale * * * to *all* purchasers * * * in the usual *wholesale* quantities * * *. [Emphasis added.]

Note that United States value as so defined does not contemplate a selling price based on *actual* sales, but a price at which the merchandise is freely *offered* for sale. I think the record clearly establishes, without resort to the disputed affidavits, that the instant merchandise was freely *offered* to all purchasers in lots of 100 pounds or more at $11.90 per pound. There is also substantial evidence of record which supports the conclusion that lots of 100 pounds or more were the usual wholesale quantities (Rautboard, appellee's general manager, so testified). Indeed, in view of the continuing *offer* to sell and in view of the *actual sales* in quantities of 100 pounds or more, I have great difficulty in understanding how the majority can reach the conclusion that one-ounce samples more nearly represent the usual *wholesale* quantities. This conclusion seems to be based on the fact that there were more individual *sales* of one-ounce quantities than any other single amount. While this rule of thumb might be useful in resolving cases where there are a number of comparable *wholesale* quantities, it is of no aid where, as here, the largest offered quantity (100 pounds or more) is so great in comparison to the smallest offered quantity (one ounce) that it is anomalous to speak of the smaller as a "wholesale" quantity. Obviously it was not, for clearly the sales were of samples.

In Aceto Chemical Co. v. United States, 51 CCPA 121, C.A.D. 846, we held that where actual sales were at varying prices, so that no single price could be established for the merchandise, the price at which the merchandise was *offered* for sale becomes relevant. Under section 402(e) as it existed at the time of the importations in the instant case, the offering price is the *only* relevant figure. The merchandise was clearly offered to all in lots of 100 pounds or more, and common sense should tell us that 100 pounds, rather than one ounce, is the usual wholesale quantity. I would affirm.