(A.R.D. 106)

UNITED STATES *v.* H. MUEHLSTEIN & Co.

Entry No. 772747-1/3.

## Second Division, Appellate Term

(Decided May 6, 1959)

*George Cochran Doub*, Assistant Attorney General (*Samuel D. Spector*, trial attorney), for the appellant.

*Sharretts, Paley & Carter* (*Howard Clare Carter* and *Richard F. Weeks* of counsel) for the appellee.

Before LAWRENCE, RAO, and FORD, Judges

RAO, Judge: This is an application for review of a decision and judgment in a reappraisement proceeding wherein it was held that the proper basis of value of certain imported ebonite or hard rubber dust was foreign value, as that value is defined in section 402(c) of the Tariff Act of 1930, as amended by the Customs Administrative Act of 1938, and that, as to each of the grades of dust involved in the importation, such value was represented by the entered value.

Said section 402(c), as amended, provides as follows:

(c) FOREIGN VALUE.—The foreign value of imported merchandise shall be the market value or the price at the time of exportation of such merchandise to the United States, at which such or similar merchandise is freely offered for sale for home consumption to all purchasers in the principal markets of the country from which exported, in the usual wholesale quantities and in the ordinary course of trade, including the cost of all containers and coverings of whatever nature, and all other costs, charges, and expenses incident to

placing the merchandise in condition, packed ready for shipment to the United States.

Of the two grades of hard rubber dust covered by this action, exported from England on November 20, 1951, the one described as grade 70/30S was entered at a unit price of 3 shillings 10 pence per pound, plus packing, as invoiced, and appraised at 4 shillings per pound, plus packing, as invoiced; the other, described as grade No. 3, was entered at a unit price of 2 shillings 3 pence per pound, plus packing, as invoiced, and appraised at 2 shillings 3¾ pence per pound, plus packing, as invoiced.

The record as made before the trial judge consists of an affidavit of one W. C. Martin, a director of James Ferguson & Sons, Ltd., the manufacturer and exporter of the instant merchandise, introduced into evidence as plaintiff's exhibit 1, and a report of an investigation of said manufacturer conducted by Assistant Appraiser John J. Schreiner, introduced into evidence as defendant's exhibit A. By stipulation of counsel, it was agreed that the proper basis of value for each of the involved grades of rubber dust was foreign value, as defined in said section 402(c), as amended, predicated in the case of grade 70/30S upon sales in England, the country of exportation, of such material, and in the case of grade No. 3, upon sales of a similar quality known as Prime B. It was further agreed that there was no statutory export value of such or similar merchandise.

In addition, counsel also stipulated as follows:

MR. SPECTOR: Well, before you conclude, I just want to make clear to the Court part of our agreement had with Mr. Carter. We picked one case as a test case, and the period. This report [defendant's exhibit A] may not in itself involve that particular period of time, but we have lists, I think, price lists of all periods of time involved, and it is understood and agreed that the sales covering the period of time which this importation is involved contains all the necessary elements that would be present if the special report were made on each shipment.

JUDGE MOLLISON: In other words, the plaintiff has no basis for raising any objection to anything contained in this report based upon the date of exportation.

MR. SPECTOR: That is right, about the conditions, and so forth.

JUDGE MOLLISON: That is agreed?

MR. PALEY: Yes, agreeable.

Basically, the question here, as it was before the trial court, is the sufficiency of the evidence to establish the usual wholesale quantities in which such or similar merchandise was offered for sale in the foreign market. It is tacitly, if not explicitly, conceded that all other elements entering into the definition of foreign value have been satisfied.

We approach the resolution of that question, guided by the well-settled principle that the usual wholesale quantity is that wholesale quantity in which the major portion of sales or offers for sale were made. *United States* v. *M. Minkus*, 21 C.C.P.A. (Customs) 382, T.D.

46912; *Jenkins Brothers* v. *United States*, 25 C.C.P.A. (Customs) 90, T.D. 49093; *Brooks Paper Company* v. *United States*, 40 C.C.P.A. (Customs) 38 C.A.D. 495. While, as observed by the trial judge, no case involving the major portion of sales rule specifically sets forth the period of time to be considered, in ascertaining the number of sales, it would appear that ordinarily a selling pattern obtaining subsequent to the date of exportation of imported merchandise would neither reflect, nor determine, a value which by statutory definition is related to the time of exportation. Such is the tenor, if not the mandate of prior adjudications, especially where price fluctuations have been shown. *Mexican Products Co.* v. *United States, United States* v. *Mexican Products Co.*, 72 Treas. Dec. 1204, Reap. Dec. 4182, ultimately reversed on other grounds, *United States* v. *Mexican Products Co.*, 28 C.C.P.A. (Customs) 80 C.A.D. 129; *Hawley & Letzerich* v. *United States*, 73 Treas. Dec. 1632, Reap. Dec. 4348; *F. S. Whelan & Sons* v. *United States*, 39 C.C.P.A. (Customs) 168, C.A.D. 482. Where, however, it is made to appear that sales subsequent to the date of exportation accurately typify the exporter's sales practices as of the date of exportation, such sales may be considered in determining usual wholesale quantities. *F. S. Whelan & Sons* v. *United States, supra.*

In view of the statement made by counsel for the Government, and the ensuing colloquy, hereinabove quoted, it may be assumed, for the purposes of this case, that the exporter's home consumption sales were characterized by a consistency that renders irrelevant the particular date of exportation of the merchandise at bar, notwithstanding that periodic changes in the price structure, applicable to subsequent deliveries, were effected.

Accordingly, we deem it pertinent to consider the schedules, attached to plaintiff's exhibit 1, of all domestic sales and deliveries made by the Ferguson company, of its grades 70/30S and Prime B ebonite dust from January 1, 1951, to March 24, 1955. Said schedules show the dates of delivery, dates of contract, the quantity involved in each sale, and the effective price, each customer being designated by number rather than by name. Excepted from the list are lots of from 5 to 30 pounds of grade 70/30S, sold and delivered for testing purposes.

Concerning the omission of such sales, the trial court observed:

* * * Inasmuch as the articles at bar are by their nature obviously manufactured and designed to be sold to consumers who use them in manufacturing applications, it seems clear that sales for testing purposes were not in the ordinary course of trade and should not be considered in determining the usual wholesale quantity under the major portion of sales or offers for sale rule.

We are of opinion that this is a reasonable inference from the facts of record. The affiant Martin, having been associated with the manu-

facture, processing, and sale of all of his company's products, was clearly in a position to know the purposes for which the merchandise was sold, and to state, as a fact within his own knowledge, that certain small quantities were sold for testing purposes. Without any inquiry into the uses for which ebonite dust is adaptable, it seems obvious that testing of the material constitutes a fugitive use, and that, in the ordinary course of business, it is not sold for that purpose. Furthermore, when it is considered that of the 235 sales of grade 70/30S listed, only three were in quantities as small as 28 pounds, it is equally obvious that a more or less bulk quantity is normally consumed in applying ebonite dust to its ultimate uses, whatever they may be. We find no error in the trial court's conclusion that such sales were not in the ordinary course of trade.

An examination of the schedules of sales attached to plaintiff's exhibit 1 reveals that the products are distributed on a weight basis, expressed in terms of hundredweights (112 pounds), quarters (28 pounds), and pounds. Presumptively because of the nature of the material, the unit of quantity of the individual sales varies greatly, and few precise amounts are duplicated. For the reason that no one quantity appeared to be the particular wholesale quantity representative of the major portion of sales, the trial court, commenting that "sales tended to group themselves in ranges of units, tens, twenties, etc., of hundredweights," made the following calculations:

Sales and deliveries by ranges of quantities, of quality 70/30S from January 1, 1951, to March 24, 1955.

| | | | | | | |
|---|---|---|---|---|---|---|
| Less than 1 cwt. to and including 9 cwt. 3 qtrs. 27 lbs. | | | | | | 43 sales |
| 10 cwt. to and including 19 cwt. 3 qtrs. 27 lbs. | | | | | | 15 " |
| 20 " " | 29 " | 3 " | 27 " | | | 97 " |
| 30 " " | 39 " | 3 " | 27 " | | | 4 " |
| 40 " " | 49 " | 3 " | 27 " | | | 46 " |
| 50 " " | 59 " | 3 " | 27 " | | | 0 " |
| 60 " " | 69 " | 3 " | 27 " | | | 9 " |
| 70 " " | 79 " | 3 " | 27 " | | | 0 " |
| 80 " and over | | | | | | 25 " |
| | | | | | | 239 " |

Sales and deliveries by ranges of quantities, of quality 70/30S from September 1, 1951, to February 29, 1952.

| | | | | | | |
|---|---|---|---|---|---|---|
| Less than 1 cwt. to and including 9 cwt. 3 qtrs. 27 lbs. | | | | | | 3 sales |
| 10 cwt. to and including 19 cwt. 3 qtrs. 27 lbs. | | | | | | 0 " |
| 20 " " | 29 " | 3 " | 27 " | | | 7 " |
| 30 " " | 39 " | 3 " | 27 " | | | 0 " |
| 40 " " | 49 " | 3 " | 27 " | | | 7 " |
| 50 " " | 59 " | 3 " | 27 " | | | 0 " |
| 60 " " | 69 " | 3 " | 27 " | | | 3 " |
| 70 " " | 79 " | 3 " | 27 " | | | 0 " |
| 80 " and over | | | | | | 6 " |
| | | | | | | 26 " |

Sales and deliveries by ranges of quantities, of quality Prime B from January 1, 1951, to March 24, 1955.

| | | | |
|---|---|---|---|
| Less than 1 cwt. to and including 9 cwt. 3 qtrs. 27 lbs. | 37 | sales |
| 10 cwt. to and including 19 cwt. 3 qtrs. 27 lbs. | 20 | " |
| 20 " " 29 " 3 " 27 " | 42 | " |
| 30 " " 39 " 3 " 27 " | 5 | " |
| 40 " " 49 " 3 " 27 " | 77 | " |
| 50 " " 59 " 3 " 27 " | 0 | " |
| 60 " " 69 " 3 " 27 " | 27 | " |
| 70 " " 79 " 3 " 27 " | 0 | " |
| 80 " and over | 13 | " |
| | 221 | " |

Sales and deliveries by ranges of quantities, of quality Prime B from September 1, 1951, to February 29, 1952.

| | | | |
|---|---|---|---|
| Less than 1 cwt. to and including 9 cwt. 3 qtrs. 27 lbs. | 4 | sales |
| 10 cwt. to and including 19 cwt. 3 qtrs. 27 lbs. | 1 | " |
| 20 " " 29 " 3 " 27 " | 8 | " |
| 30 " " 39 " 3 " 27 " | 0 | " |
| 40 " " 49 " 3 " 27 " | 10 | " |
| 50 " " 59 " 3 " 27 " | 0 | " |
| 60 " " 69 " 3 " 27 " | 3 | " |
| 70 " " 79 " 3 " 27 " | 0 | " |
| 80 " and over | 1 | " |
| | 27 | " |

Accordingly, it was held that the usual wholesale quantities of both grade 70/30S and Prime B were 20 cwt. to 50 cwt.

Counsel for appellant challenges these computations as an unwarranted "bunching" of sales of various amounts, at varying prices, and, in effect, urges that usual wholesale quantities must be determined by that single quantity in which the greatest portion of sales was made. It is interesting to observe, however, that whether sales are expressed in ranges of tens of hundredweights, single hundredweights, or individual units, the results are found to be substantially the same. Of the 235 sales of grade 70/30S, it appears that the greatest number, to wit, 94, were made in quantities of 20 cwt., 0 qtrs., 0 lbs., to 20 cwt., 2 qtrs., 24 lbs., and again, the greatest number, to wit, 10, in the single quantity of 20 cwt., 1 qtr., 0 lbs. With respect to quality Prime B, of the 222 sales listed, the greatest number, to wit, 72, were in ranges of 40 cwt., 0 qtrs., 0 lbs., to 40 cwt., 3 qtrs., 26 lbs., the most sales of any one quantity being 6 of 10 cwt., 0 qtrs., 0 lbs., and 6 of 20 cwts., 1 qtr., 4 lbs.

Since the evidence shows that during the period covered by the price schedules in effect at the time of exportation, and which prevailed from September 1, 1951, to February 29, 1952, prices did not vary by reason of quantities in excess of 20 cwt., in the case of quality

70/30S, and 10 cwt., in the case of quality Prime B, it seems clear that said quantities, respectively, or more, were usual wholesale quantities.

The schedules show the following sales during the period between September 1, 1951, and February 29, 1952, of quality 70/30S:

| Date of sale | For delivery | | Quantity Cwt. | Qtrs. | Lbs. | Price | Customer |
|---|---|---|---|---|---|---|---|
| 4–23–51* | Sept. | 1951 | 20 | 0 | 0 | 3/10d | No. 2 |
| 9–12–51 | " | 1951 | 40 | 3 | 16 | 3/10½d | " 15 |
| 9–14–51 | Oct. | 1951 | 61 | 0 | 16 | 3/10d | " 4 |
| 9–20–51 | Sept. | 1951 | 40 | 2 | 20 | 3/11d | " 20 |
| 10–8–51 | Oct. | 1951 | 1 | 0 | 15 | 3/11d | " 21 |
| 10–15–51 | Nov.–Dec. | 1951 | 20 | 0 | 14 | 3/10½d | " 5 |
| 10–17–51 | Nov. | 1951 | 60 | 2 | 0 | 3/10d | " 4 |
| 10–19–51 | Oct. | 1951 | 1 | 0 | 14 | 3/11d | " 19 |
| 10–26–51 | Nov.–Feb. | 1952 | 100 | 0 | 0 | 3/10d | " 2 |
| 11–19–51 | Nov. | 1951 | 81 | 1 | 16 | 3/10d | " 7 |
| 11–21–51 | Dec. | 1951 | 41 | 0 | 6 | 3/10d | " 4 |
| 12–3–51 | " | 1951 | 20 | 0 | 20 | 3/11d | " 20 |
| 12–4–51 | " | 1951 | 20 | 0 | 8 | 3/10d | " 17 |
| 12–12–51 | " | 1951 | 20 | 1 | 12 | 3/11d | " 20 |
| 12–12–51 | " | 1951 | 40 | 2 | 20 | 3/10½d | " 15 |
| 12–13–51 | " | 1951 | 5 | 0 | 4 | 3/11d | " 21 |
| 12–13–51 | Jan. | 1952 | 40 | 2 | 18 | 3/10d | " 4 |
| 1–9–52 | " | 1952 | 40 | 0 | 6 | 3/10d | " 22 |
| 1–21–52 | Jan.–Feb. | 1952 | 61 | 2 | 24 | 3/10d | " 4 |
| 1–31–52 | Feb. | 1952 | 20 | 0 | 24 | 3/10d | " 22 |
| 2–5–52 | " | 1952 | 40 | 1 | 8 | 3/11d | " 6 |
| 2–13–52 | " | 1952 | 20 | 0 | 22 | 3/11d | " 20 |
| 2–14–52 | Mar.–Apr. | 1952 | 80 | 0 | 0 | 3/9d | " 2 |
| 2–18–52 | Feb.–Mar. | 1952 | 80 | 0 | 14 | 3/10d** | " 4 |
| 2–18–52 | Feb. | 1952 | 20 | 1 | 4 | 3/10d | " 22 |
| 2–29–52 | Mar. | 1952 | 20 | 0 | 12 | 3/9½d | " 5 |

*Price reduced Sept. 1, 1951.
**Price reduced Mar. 1, 1952, to 3/9d.

Of these sales, those to customers 5, 6, 15, 19, 20, and 21 were at prices higher than the claimed value of 3/10d. Sales to customers 19 and 21 being in quantities smaller than what we have held to be usual wholesale quantities may, of course, be disregarded as not determinative of market value. *G. W. Pleissner* v. *United States*, 16 Ct. Cust. Appls. 507, T.D. 43237.

The trial court disregarded the remaining higher priced sales for the reasons assigned as follows, based upon recitals in plaintiff's exhibit 1:

1. That customer number 15 was a slow payer who was charged an additional 1/2d per pound, for taking excessive credit.

2. That customer number 6 was a new customer, whose purchasing volume had not sufficiently been established to entitle him to the regular price.

3. That customer number 20 was a competitive manufacturer, not a regular purchaser.

4. That none of the foregoing sales was made in the ordinary course of trade.

5. That the sale to customer 5 at 3/10½d on October 15, 1951, should be averaged with the sale to him of February 29, 1952, at 3/9½d so as to make his price for his total purchases during the period in question 3/10d.

With respect to customer 5, we are constrained to disagree that an average of his two purchases must be taken to conform his price to those of other purchasers of the usual wholesale quantities. A more reasonable explanation lies in the fact that the sale of February 29, 1952, called for delivery in March and April 1952, when a new and lower price schedule became effective, under which he was still being charged 1/2d above the prevailing scale of 3/9d.

Furthermore, we are of opinion that neither a sale to a new customer, nor a sale to a competitive manufacturer, so far transcends customary business practices as to be considered fugitive or beyond the scope of the ordinary course of trade.

The foreign value statute calls for the price to all purchasers, in the principal markets of the country of exportation, and the term "all purchasers" includes anyone who cares to buy in such markets, not some particular group of persons, nor a limited number of persons, nor those who fall within a particular category. *United States* v. *American Glanzstoff Corp.*, 24 C.C.P.A. (Customs) 35, T.D. 48308; *United States* v. *Richard & Co.*, 15 Ct. Cust. Appls. 143, T.D. 42216; *United States* v. *G. Gennert, Inc.* 22 C.C.P.A. (Customs) 374, T.D. 47388. Accordingly, and since it appears that all purchasers could not buy the manufacturer's grade 70/30S, in the usual wholesale quantities of 20 cwt. or more, at less than 3/11d, 3/11d and not 3/10d, as found by the trial court, represents the foreign value of grade 70/30S.

The following sales of Prime B ebonite dust are shown during the period between September 1, 1951, and February 29, 1952:

| Date of sale | For delivery | | Quantity Cwt. | Qtrs. | Lbs. | Price | Customer |
| --- | --- | --- | --- | --- | --- | --- | --- |
| 9–14–51 | Oct. | 1951 | 20 | 1 | 16 | 2/3d | No. 4 |
| 9–24–51 | Sept.–Oct. | 1951 | 100 | 2 | 6 | 2/3d | " 33 |
| 9–25–51 | Oct. | 1951 | 40 | 3 | 2 | 2/3d | " 30 |
| 10–1–51 | Oct. | 1951 | 20 | 1 | 24 | 2/3d | " 38 |
| 10–5–51 | Oct. | 1951 | 40 | 1 | 0 | 2/3d | " 2 |
| 10–12–51 | Oct. | 1951 | 1 | 0 | 0 | 2/3½d | " 32 |
| 10–17–51 | Nov. | 1951 | 20 | 2 | 18 | 2/3d | " 4 |
| 10–31–51 | Nov. | 1951 | 3 | 1 | 6 | 2/3½d | " 32 |
| 11–6–51 | Nov. | 1951 | 40 | 1 | 10 | 2/3d | " 30 |
| 11–14–51 | Nov. | 1951 | 20 | 2 | 14 | 2/3d | " 4 |
| 11–15–51 | Dec. | 1951 | 61 | 0 | 18 | 2/3d | " 2 |
| 11–21–51 | Dec. | 1951 | 41 | 0 | 2 | 2/3d | " 4 |
| 12–6–51 | Dec. | 1951 | 10 | 0 | 0 | 2/3d | " 38 |
| 12–10–51 | Dec. | 1951 | 40 | 3 | 0 | 2/3d | " 36 |
| 12–12–51 | Dec. | 1951 | 40 | 3 | 24 | 2/3d | " 30 |
| 12/13/51 | Jan. | 1952 | 40 | 3 | 14 | 2/3d | " 4 |
| 1–7–52 | Jan. | 1952 | 61 | 0 | 18 | 2/3d | " 2 |
| 1–9–52 | Jan. | 1952 | 40 | 3 | 24 | 2/3d | " 36 |
| 1–3–52 | Jan. | 1952 | 20 | 1 | 22 | 2/3d | " 22 |
| 1–14–52 | Jan. | 1952 | 3 | 1 | 14 | 2/3½d | " 32 |
| 1–21–52 | Feb. | 1952 | 40 | 2 | 16 | 2/3d | " 4 |
| 1–21–52 | Jan. | 1952 | 40 | 2 | 26 | 2/3d | " 30 |
| 1–28–52 | Feb. | 1952 | 20 | 1 | 4 | 2/3d | " 38 |
| 1–31–52 | Feb. | 1952 | 3 | 1 | 12 | 2/4d | " 31 |
| 2–14–52 | Mar. | 1952* | 60 | 2 | 24 | 2/1d | " 2 |
| 2–18–52 | Mar. | 1952* | 20 | 0 | 20 | 2/1d | " 4 |
| 2–20–52 | Feb. | 1952 | 20 | 1 | 4 | 2/3d | " 38 |

*Delivered during next pricing period.

As the only sales in quantities in excess of 10 cwt. at prices other than 2/3d per pound called for delivery in the next pricing period, it is apparent that all sales in the usual wholesale quantities were made at the claimed value of 2/3d per pound, which we hold to be the foreign value of imported grade No. 3.

Inasmuch as appellant has not assigned as error the action of the trial court in granting plaintiff's motion to strike from the record the so-called office pricelists annexed to defendant's exhibit A, we are not disposed to dwell at length upon the sufficiency of that document as evidence in derogation of the foregoing conclusions. Suffice it to say that said "pricelists" were not shown to have been circulated among any of the manufacturer's customers; they do not appear to relate to any particular wholesale quantity; and they do not reflect any of the sales shown to have been made during the pricing period covering the date of exportation of the merchandise at bar.

In any event, we affirm the trial court's action in granting the motion to strike, and agree that without said "pricelists" the evidence contained in defendant's exhibit A is insufficient to overcome the *prima facie* case established by plaintiff.

Based upon the foregoing considerations, this court finds the following facts:

1. That the merchandise involved in this application for review consists of ebonite or hard rubber dust, imported in two grades.

2. That grade 70/30S was entered at 3 shillings 10 pence per pound, plus packing, as invoiced, and was appraised at 4 shillings per pound, plus packing, as invoiced.

3. That grade No. 3 was entered at 2 shillings 3 pence per pound, plus packing, as invoiced, and appraised at 2 shillings 3¾ pence per pound, plus packing, as invoiced.

4. That, at or about the time of exportation of the merchandise at bar, ebonite dust such as grade 70/30S was freely offered for sale and sold for home consumption to all purchasers in the principal markets of the country of exportation, in usual wholesale quantities, and in the ordinary course of trade.

5. That, at or about the time of exportation of the merchandise at bar, ebonite dust such as grade No. 3 was not freely offered for sale or sold for home consumption to all purchasers in the principal markets of the country of exportation, but that merchandise similar thereto, and of a grade known as Prime B ebonite dust, was so freely offered for sale in usual quantities and in the ordinary course of trade.

6. That the usual wholesale quantities in which grade 70/30S was freely offered for sale were 20 hundredweight or more.

7. That the usual wholesale quantities in which grade Prime B was freely offered for sale were 10 hundredweight or more.

8. That the price, at the time of exportation, at which grade 70/30S was so freely offered for sale was 3 shillings 11 pence per pound, plus packing.

9. That the price, at said time, at which Prime B ebonite dust was so freely offered for sale was 2 shillings 3 pence per pound, plus packing.

10. That neither such nor similar merchandise was, at or about the time of exportation, freely offered for sale to all purchasers for exportation to the United States.

The court, therefore, concludes:

1. That foreign value, as defined in section 402(c) of the Tariff Act of 1930, as amended by the Customs Administrative Act of 1938, is the proper basis of value for the merchandise here involved, and

2. That such value for grade 70/30S was 3 shillings 11 pence per pound, plus packing, and for grade No. 3, 2 shillings 3 pence per pound, plus packing.

Judgment will issue accordingly.