(R.D. 11242)

HENRY PICARD, JR. *v.* UNITED STATES

Entry Nos. 1874–H; 2941–H.

(Decided November 29, 1966)

*Sharretts, Paley & Carter* (*Howard C. Carter* of counsel) for the plaintiff. *Barefoot Sanders*, Assistant Attorney General (*Samuel D. Spector*, trial attorney), for the defendant.

RAO, Chief Judge: The appeals for reappraisement listed above were consolidated for the purposes of trial. They cover certain so-called sisal pads, exported from Mexico on or about August 8 and

September 4, 1959. Since sisal pads were not included in the final list of articles (T.D. 54521) from which the applicability of the Customs Simplification Act of 1956 is withheld, appraisal of the involved merchandise was made on the basis of export value, as that value is defined in section 402(b) of the Tariff Act of 1930, as amended by the Customs Simplification Act of 1956. This provision reads as follows:

EXPORT VALUE—For the purposes of this section, the export value of imported merchandise shall be the price, at the time of exportation to the United States of the merchandise undergoing appraisement, at which such or similar merchandise is freely sold or, in the absence of sales, offered for sale in the principal markets of the country of exportation, in the usual wholesale quantities and in the ordinary course of trade, for exportation to the United States, plus, when not included in such price, the cost of all containers and coverings of whatever nature and all other expenses incidental to placing the merchandise in condition, packed ready for shipment to the United States.

With respect to the merchandise involved in R59/17703, the appraiser returned the following values: Grade A sisal pads, which were composed of 100 percent sisal or henequen fiber, were appraised at $0.09875 per pound, less prorated ocean freight charges; Grade B sisal pads, which were composed of 50 percent sisal or henequen fiber and 50 percent bagasse, were appraised at the invoice unit price, less prorated ocean freight charges. As to the merchandise the subject of R59/17705, the appraiser found the export value of the Grade A sisal pads involved therein to be $0.09875 per pound, less prorated ocean freight charges.

Plaintiff does not dispute the basis of valuation adopted by the appraiser. However, plaintiff contends, in each instance, that the net invoice unit prices represent the export value of the involved merchandise. Specifically, plaintiff claims that the proper values should be $0.09 and $0.0925 per pound, less prorated ocean freight and inland charges for the Grade A pads involved in R59/17703 and R59/17705, respectively; and $0.0825 per pound, less prorated ocean freight and inland charges for the Grade B sisal pads involved in R59/17703. From this statement of the facts, it is apparent that two issues are presented here for determination: First, the amount of the *per se* unit export values of the sisal pads; and second, whether the inland charges properly form a part of the export value thereof.

This case was tried on documentary evidence consisting of three affidavits introduced on behalf of the plaintiff-importer which, insofar as pertinent to the conclusions reached herein, will be discussed, *infra*. The affiant in each instance was Mr. Felipe Gaber, assistant manager, later manager, of the Progress Padding Co. of Mérida, Yucatán, Mexico, the manufacturer of the sisal pads involved herein. The Government offered no evidence.

It is well settled that, in reappraisement actions, the value found by the appraiser[1] is presumptively correct, and a party desiring to challenge his finding must establish *prima facie* not only that the appraiser acted erroneously, but also that the claimed value is proper. *Kobe Import Co.* v. *United States*, 42 CCPA 194, C.A.D. 593. Inability to satisfy either of these evidentiary burdens amounts to a failure of proof requiring an affirmance of the appraised values. In measuring the full extent of plaintiff's burden of proof, one further observation is necessary. The appraisements involved in the instant appeals were not expressed in terms of a first cost or *per se* price to which the questioned inland charges were added, under which circumstances if existing the appraisements might be deemed separable and the litigant permitted to challenge only the questioned inland charges while relying upon the presumption of correctness to satisfy the other elements of export value. *United States* v. *Dan Brechner, etc.*, 38 Cust. Ct. 719, A.R.D. 71. Rather, the court is here faced with appraisements expressed in an f.o.b. port of exportation price, a form of appraisement not normally considered separable. Thus, to sustain its evidentiary burdens, plaintiff was required, in conformity with the statutory prescripts, to establish every element in the statutory definition of export value. *S. S. Kresge Co. et al.* v. *United States*, 45 Cust. Ct. 469, Reap. Dec. 9778; *Bud Berman Sportswear, Inc.* v. *United States*, 55 Cust. Ct. 574, Reap. Dec. 11056, affirmed *United States* v. *Bud Berman Sportswear, Inc.*, 57 Cust. Ct. 733, A.R.D. 211, appeal pending; *Valley Knitting Co., Inc., et al.* v. *United States*, 44 Cust. Ct. 599, Reap. Dec. 9627.

For the reasons hereinafter assigned, the court finds plaintiff's proof deficient in several respects. Plaintiff's initial claim that the invoice unit prices, rather than the appraised unit values, properly reflect the export value of the involved sisal pads is not substantiated by the evidence. As previously mentioned, plaintiff is charged with the burden of proving export value, that is to say, of showing, *inter alia*, that the merchandise in question was freely sold or, in the absence of sales, offered for sale in the principal markets of the exporting country. So far as is pertinent to the discussion of the issues in the case at bar, the term "freely sold or, in the absence of sales, offered for sale" is statutorily defined as follows:

[Sec. 402, as amended.] (f) DEFINITIONS.—For the purposes of this section—

(1) The term "freely sold or, in the absence of sales, offered for sale" means sold or, in the absence of sales, offered—

\*      \*      \*      \*      \*

---

[1] The customs official charged with the duty of finding value at the time covered by these importations.

(B) in the ordinary course of trade to one or more selected purchasers at wholesale at a price which fairly reflects the market value of the merchandise.

without restrictions as to the disposition or use of the merchandise by the purchaser, except [certain minor restrictions not relevant to this inquiry].

Plaintiff's exhibit 1 states in substance that, prior to the date of importation, plaintiff or its predecessor, the Heyman Co., purchased the entire output of the Progress Padding Co. and that, beginning with December of 1959, the producer increased its production so that it would then be able to offer the merchandise to others for exportation to the United States. From this statement, it seems fair to conclude, and the court so holds, that, at the time of importation, plaintiff was a "selected purchaser" within the meaning of section 402(f) (1) (B), as amended, *supra*.

As a "selected purchaser," the responsibility devolved upon plaintiff to establish not only that the sales or offers of sale were made to it in the "ordinary course of trade," as defined in the valuation statute, but also that such sales fairly reflected the market value of the merchandise.

The "ordinary course of trade," within the intendment of the export value statute (section 402(f) (2), as amended), refers to:

\* \* \* the conditions and practices which for a reasonable time prior to the exportation of the merchandise undergoing appraisement, have been normal in the trade under consideration with respect to merchandise of the same class or kind as the merchandise undergoing appraisement.

However, the instant record is devoid of probative evidence concerning the conditions and practices which were normal and usual in the sisal pad trade *at or prior to the time of exportation*, as is required by the statute. While it is true that plaintiff's exhibits 1 and 2 list the aggregate sales of the Progress Padding Co. for the period 1958–1965, those sales which occurred subsequent to the time of exportation are wholly irrelevant to the subject of this inquiry and must be disregarded since there is no showing that the sales subsequent to 1959 typified the producer's sales pattern at or prior to the time of exportation. *United States* v. *H. Muehlstein & Co.*, 42 Cust. Ct. 760, A.R.D. 106. What we are left with is a bare listing of the total sales of the producer to the plaintiff during 1958 and 1959 unaccompanied by any invoices or other evidences of sale. Of far greater objection, however, is the fact that there is no evidence tending to show the course of conduct pursued by other producers in the field, keeping in mind that the "ordinary course of trade" refers to the trade *as a whole*. *Chr. Bjelland & Co., Inc.* v. *United States*, 51 Cust. Ct. 520, A.R.D. 161, affirmed 52 CCPA 38, C.A.D. 855. It has been held that evidence of

the manner in which one exporter conducts his business does not necessarily establish what is normal or usual in the trade under consideration. The practices of others engaged in the same class of trade are relevant and material elements in depicting what constitutes the "ordinary course of trade." *Inter-Maritime Fwdg. Co., Inc.* v. *United States*, 51 Cust. Ct. 529, A.R.D. 162. In the absence of competent proof that the sales to plaintiff comported with the generally recognized course of conduct in the sisal pad trade, plaintiff has failed to discharge a burden imposed on it by law and, thus, cannot prevail herein.

Similarly, plaintiff has failed to show to the satisfaction of the court that the sale price to Picard fairly reflected the market value of the involved sisal pads, another element, proof of which is indispensable to plaintiff's recovery herein. Plaintiff's exhibit 1 contains a listing of the purported sale and offering prices for Grade A and B sisal pads coupled with the following allegation:

* * * The above prices in every case represent the cost of materials and fabrication plus an amount of at least 10% of that sum for usual general expenses and an amount of at least 8% of the amount of the cost of materials, fabrication and usual general expenses for profit. * * *

However, this naked allegation, unaccompanied by affirmative evidence in support thereof, constitutes nothing more than the affiant's conclusory statement as to an essential issuable fact and is, accordingly, entitled to little, if any, weight in the disposition of the instant appeals. *Brooks Paper Company* v. *United States*, 40 CCPA 38, C.A.D. 495.

Moreover, the record is barren of any other probative evidence to establish that the sales price fairly reflected the market value of the merchandise. In fact, it is doubtful whether plaintiff has even established any price for Grade A and B sisal pads other than that charged to it. In this connection, the following statement in plaintiff's exhibit 1 is worthy of comment:

My company does not publish or circulate any price list for these materials for exportation to the United States. Grades A and B pads were offered for sale to anyone who wished to purchase them, within the limits of our production, for exportation to the United States without any restrictions as to resale or use or in any respect whatsoever. * * *

If the foregoing statement was proffered to establish the manner in which such or similar merchandise was freely offered for sale, it is clearly inadequate for that purpose. It is by now settled law that a mere statement of willingness to sell, unaccompanied by pricelists or other evidence of overt communications with prospective customers,

is lacking in probative value. *Kuttroff, Pickhardt & Co. (Inc.)* v. *United States*, 14 Ct. Cust. Appls. 176, T.D. 41698. *Delmonico International Corp.* v. *United States*, 52 Cust. Ct. 656, A.R.D. 176.

In *Transatlantic Shipping Co., Inc., etc.* v. *United States*, 28 CCPA 19, C.A.D. 118, the Court of Customs and Patent Appeals considered an affidavit which averred "that the manufacturer has no agreement limiting its exportations of the involved merchandise solely to any individual, firm, or company in the United States, but is willing to sell the same to anyone who wants to buy at the same price as that charged to appellant Absorbo Beer Pad Co., Inc." The court soundly disapproved of this statement holding that it did not constitute proof of the market value or price at the time of exportation as is required by the statute.

Similarly, in *Golding Bros. Co., Inc.* v. *United States*, 6 Cust. Ct. 964, Reap. Dec. 5272, the court also viewed with disfavor an affidavit which stated that "the price at which this merchandise was sold to Golding Bros. Co., Inc., is the price at which our firm would have been willing to receive from anyone in the United States, desiring to purchase the same quality * * *."

In the instant appeals, as in the *Transatlantic Shipping* and *Golding Bros.* cases, *supra*, it is clear that plaintiff has sought to establish a market price for the involved merchandise with evidence of a purely hypothetical market revealing, in essence, the course of conduct the exporter would have followed had he been confronted with offers from other prospective purchasers—conditions not here shown to exist. *Golding Bros. Co., Inc.* v. *United States*, 6 Cust. Ct. 877, Reap. Dec. 5196. But the statute does not permit an essential element of export value to be the subject of speculation and conjecture.

Under the cited authorities, the instant record falls far short of establishing the price which fairly reflects the market value of the merchandise. Accordingly, I am constrained to hold that the appraised *per se* unit values are proper.

Plaintiff has also urged in the instant appeals that the appraiser committed error by failing to deduct certain specified inland charges from the appraised unit values. Plaintiff asserts that these inland charges are not properly a part of the export value of the merchandise in question.

As has already been observed, the court is not faced here with a separable appraisement. The statute and controlling case law, therefore, do not permit plaintiff to challenge only the element of the inland charges and rely on the presumption of correctness to satisfy the remainder of its evidentiary requirements. To the contrary, in order to be successful in the instant appeals, plaintiff was required to establish *prima facie* each and every element of export value, as defined in

section 402(b), as amended, *supra*, a burden which the court finds plaintiff has failed to discharge.

In support of its claim that the inland charges should have been deducted from the appraised unit values, plaintiff cites to the court the case of *Haddad & Sons, Inc.* v. *United States*, 54 Cust. Ct. 475, Reap. Dec. 10874. In *Haddad*, the question before the court was whether certain shoes exported from Japan were freely sold at the ex-factory price. A witness testified therein that he had negotiated as to the purchase price of the goods, which price was the price at the factory. It also appeared that the merchandise was invoiced at the ex-factory price and, more important, there was affirmative evidence of sales at a price which did not include the inland charges there in question. This court, in upholding the plaintiff's claim, noted that:

\* \* \* *the proof establishes that, as a matter of fact, all of the involved merchandise was purchased at ex-factory prices* and that the added items [i.e., the inland charges] were no part of the prices or value of the goods but were part of the costs to the importer of getting the goods from the place of manufacture aboard the respective ships for transportation to the United States. \* \* \* [Emphasis added.]

It is quite clear from the italicized portion quoted above that the decision in *Haddad* rested upon the strong and convincing proofs adduced therein. There was substantial evidence of actual sales at the ex-factory price, proof of which is conspicuously absent from the instant record. The sole evidence proffered with respect to the deductability of the questioned charges in the instant appeals was the following statement from plaintiff's exhibit 1:

\* \* \* In every case, the ex-factory price is the same, and any prospective United States importer who wished to take possession of the merchandise at our factory could do so, and he would be responsible for all charges arising thereafter. For practical purposes and as a convenience to our customers, we include in our selling price the cost of loading, transportation from Merida to Progreso, forwarding charges and ocean freight charges, but in any case an American importer could take possession of this merchandise at the factory and make his own arrangements for transportation to the United States *although no purchaser has ever done so.* [Emphasis added.]

As I view the controlling authorities, this affidavit is legally insufficient to overcome the statutory presumption of correctness attaching to the appraiser's return of value. Plaintiff's exhibit 1 contains no evidence of actual sales at the ex-factory prices. The affiant, Mr. Gaber, has merely stated that the importer could have purchased at the factory if he so desired. It is apparent that the importer is hereby seeking to satisfy his statutory burden of proof with evidence of *potential*, not actual, sales at a price which did not include the inland charges here in question. However, to allow such a practice

would run afoul of the strict statutory mandate that "export value * * * shall be the price * * * at which such or similar merchandise is freely sold or, in the absence of sales, offered for sale * * *." Thus, where, as here, there is competent evidence of *actual* sales at the f.o.b. port prices, evidence of *offers* of sale at a price not including the inland charges cannot be considered. *Louis Goldey Co., Inc.* v. *United States*, 55 Cust. Ct. 759, A.R.D. 196. As my colleague, Judge Richardson, observed in *Delmonico International Corp.* v. *United States, supra*:

* * * Such language leaves no room for prognosis as to what might have been the course of a sales transaction insofar as pricing arrangements are concerned. What is actually done in terms of sales or offers of sale is what establishes a market price, and not merely what it is possible to do in the matter of sales or offers of sales. It has been held that a *willingness to sell* merchandise at a price is no evidence of a market price. See *Transatlantic Shipping Co., Inc., et al.* v. *United States*, 28 CCPA 19, C.A.D. 118, and *Golding Bros. Co., Inc.* v. *United States*, 6 Cust. Ct. 877, Reap. Dec. 5196. By the same token, the fact that merchandise *could have been sold* at a price is no evidence of a market price either. Since the evidence at bar is limited to the manufacturer's capabilities for making sales at ex-factory prices, and is not at all addressed to its actual sales or offers of sale at ex-factory prices, the evidence is palpably deficient to establish the ex-factory prices contended for herein by appellant. * * * [Emphasis quoted.]

So too in the case at bar, in the absence of competent evidence showing actual sales at the ex-factory prices, the rule laid down in *United States* v. *Paul A. Straub & Co., Inc.*, 41 CCPA 209, C.A.D. 553, is controlling and must be adhered to herein. In the *Straub* case, *supra*, the court held that, where all sales were made in the principal market on an f.o.b. port of exportation basis, and there was no evidence that any sales were ever made on an ex-factory basis, the f.o.b. price, including freight costs, reflected the export value of the merchandise. Accordingly, plaintiff's second claim, that the inland charges should have been deducted from the appraised unit values is not substantiated by the evidence.

Based upon the record in the instant appeals and for the aforementioned reasons, I make the following findings of fact:

1. That the merchandise involved herein consists of sisal pads which were exported from Mexico on or about August 8 and September 4, 1959.

2. That said merchandise is not on the final list of articles (T.D. 54521) from which the applicability of the Customs Simplification Act of 1956 is withheld.

3. That there is no evidence to show that the sale of the involved sisal pads to plaintiff was made in the "ordinary course of trade," as defined in said section 402(f), as amended, *supra*.

4. That there is no evidence to show that the sale price of the involved sisal pads fairly reflected the market value of the merchandise.

5. That there is no evidence of actual sales at the ex-factory prices contended for herein.

I, therefore, conclude as matters of law:

1. That export value, as that value is defined in section 402(b) of the Tariff Act of 1930, as amended by the Customs Simplification Act of 1956, is the proper basis for valuation of the involved sisal pads.

2. That presumption of correctness of the appraised values has not been overcome, and such values are, therefore, the values of the merchandise here involved.

Judgment will be entered accordingly.