(R.D. 11713)

JUDSON SHELDON INTERNATIONAL CORPORATION
ISLAND WOODS INTERNATIONAL
*v.* UNITED STATES

Entry Nos. 49268; 44336; 41037.

(Decided June 24, 1970)

*Glad & Tuttle* (*Edward N. Glad* of counsel) for the plaintiffs.

*William D. Ruckelshaus*, Assistant Attorney General (*Harold L. Grossman*, trial attorney), for the defendant.

WATSON, Judge: The merchandise involved in the above consolidated appeals for reappraisement described on the invoices herein as "Prefinished Philippine Lauan Plywood", was sold by three Philippine mills, Findlay Millar Timber Company (hereinafter called Findlay Millar), International Hardwood & Veneer Co. (hereinafter called Inter-Wood), and Taggat Industries, Inc. (hereinafter called Taggat) to Island Woods International of California (hereinafter called I.W.I., through its buying agent, Island Woods, Inc. of Manila (hereinafter called I.W.M.), and exported therefrom between December 16, 1966 and February 2, 1967.

The parties have stipulated that the merchandise does not appear on the Final List promulgated by the Secretary of the Treasury, T.D. 54521. The merchandise was appraised on the basis of constructed value as defined in section 402(d), Tariff Act of 1930, as amended by the Customs Simplification Act of 1956. Plaintiffs contend that said basis of appraisement was erroneous and that export value, as defined in section 402(b) of said act, is the proper basis.

The relevant statutory material reads as follows:

Section 402(b) of the Tariff Act of 1930, as amended by the Customs Simplification Act of 1956:

> (b) EXPORT VALUE.—For the purposes of this section, the export value of imported merchandise shall be the price, at the time of exportation to the United States of the merchandise undergoing appraisement, at which such or similar merchandise is freely sold or, in the absence of sales, offered for sale in the principal markets of the country of exportation, in the usual wholesale quantities and in the ordinary course of trade, for exportation to the United States, plus, when not included in such price, the cost of all containers and coverings of whatever nature and all other expenses incidental to placing the merchandise in condition, packed ready for shipment to the United States.

Section 402 (f) of the Tariff Act of 1930, as amended by the Customs Simplification Act of 1956 :

(f) DEFINITIONS.—For the purposes of this section—

(1) The term "freely sold or, in the absence of sales, offered for sale," means sold, or, in the absence of sales, offered—

(A) to all purchasers at wholesale, or

(B) in the ordinary course of trade to one or more selected purchasers at wholesale at a price which fairly reflects the market value of the merchandise,

without restrictions as to the disposition or use of the merchandise by the purchaser, * * *.

(2) The term "ordinary course of trade" means the conditions and practices which, for a reasonable time prior to the exportation of the merchandise undergoing appraisement, have been normal in the trade under consideration with respect to the merchandise of the same class or kind as the merchandise undergoing appraisement.

The record in this case consists of the testimony of three witnesses called by the plaintiffs, exhibits offered by the plaintiffs, and one exhibit offered by the defendant.

Plaintiffs' first witness was Mr. Milton A. Murayama, an import specialist with the United States Customs Service at the port of San Francisco who advisorily appraised the merchandise involved herein. The basis of appraisement he used was constructed value as defined in section 402 (d), Tariff Act of 1930, as amended by the Customs Simplification Act 1956 and erroneously included as part of that value was a 1 percent buying commission. Neither a buying nor a selling commission is part of the constructed value.

Plaintiffs' second witness was Mr. John G. Davidson, the president of I.W.I., the chief party of interest in this action. Its business is primarily the importing of plywood from the Philippines. Mr. Davidson, his brother and two other men are the sole owners of I.W.I. They also own I.W.M. which acts as the buying agent of I.W.I. in the Philippines.

The merchandise at bar consists of various styles of prefinished plywood panels. They were purchased by I.W.M. from three plywood mills in the Philippines, Findlay Millar, Taggat and Inter-Wood.

Mr. Davidson and his brother own most of the stock in the Findlay Millar mill and take an active role in the mill's affairs.

At the time the merchandise in issue was being sold to I.W.I., the above three mills were selling their entire output of prefinished lauan plywood to plaintiffs. This was necessitated by the fact that the mills

were located in the forest and their port facilities were far from the normal shipping lanes. In order for a ship to stop at the mill, the cargo had to fill the entire ship, thus necessitating large sales to one customer. Though I.W.I. was at the time the sole purchaser of the merchandise at bar, there was no agreement, oral or written, between the parties whereby it (I.W.I.) agreed to take the entire production of the three mills.

The prices paid by I.W.I. for the lauan plywood were established by the Taggat mill. Findlay Millar and Inter-Wood were paid the same price. Mr. Davidson stated that this was done to protect the minority shareholder of Findlay Millar.

It is well established by both statute and judicial interpretation, that the action of the appraiser is clothed with a presumption of correctness which is not overcome until the appraiser's findings are shown to be erroneous and the claimed values are established as correct. 28 U.S.C., section 2633; *Brooks Paper Company* v. *United States*, 40 CCPA 38, C.A.D. 495 (1952); *Kenneth Kittleson* v. *United States*, 40 CCPA 85, C.A.D. 502 (1952); *Kobe Import Co.* v. *United States*, 42 CCPA 194, C.A.D. 593 (1955). To overcome this presumption plaintiff must meet every material issue involved in the case, and if he fails, the value fixed by the appraiser remains in full force and effect. *Brooks Paper Company* v. *United States, supra.*

It is plaintiffs' contention that the proper basis for appraisement of the merchandise at bar is export value as defined by section 402(b), *supra.* If established, it would take precedence over constructed value. Section 402(a)(1)(2) and (3) of the Tariff Act of 1930, as amended.

In view of the character of the sales made by the three mills to I.W.I., it seems fair to conclude and the court so holds, that plaintiff was a "selected purchaser" within the meaning of section 402(f) (1)(B), as amended, *supra.* With regard to sales made from Findlay Millar to plaintiff, I find that I.W.I. is moreover a "related person" within the meaning of section 402(g) of the Tariff Act of 1930, as amended.

As a "selected purchaser", the responsibility devolved upon plaintiff (I.W.I.) to establish not only that the sales or offers of sale were made to it in the "ordinary course of trade", as defined in the valuation statute, but also that such sales fairly reflected the market value of the merchandise. *Henry Picard, Jr.* v. *United States*, 57 Cust. Ct. 689, R.D. 11242 (1966).

This court will accept the argument of plaintiffs that the locations of the mills necessitated that sales be made in unusually large lots and to primarily one purchaser, and that such sales are made in the "ordinary course of trade". However, as a "selected purchaser" plaintiff

still must show that such sales fairly reflect market value of the merchandise. In this I find that plaintiffs have failed.

Plaintiffs have offered extensive evidence in the form of affidavits of officers of the involved mills (exhibits 1 thru 7) stating that the prices paid by I.W.I. were reflective of market value and in some instances actually higher. However, these affidavits do little to establish what was, in fact, the market value of prefinished lauan plywood in the Philippines.

From the record, it is clear that there were other companies making and selling plywood similar to the merchandise here in issue. While it is not incumbent upon an importer in all cases to show that the price it paid was a fair reflection of market value by showing sales or offerings of sale by other manufacturers of the same or similar merchandise, it would seem that in this instance such a showing would be warranted.

As stated in *United States* v. *Acme Steel Company*, 50 Cust. Ct. 529, A.R.D. 152, 216 F. Supp. 448 (1963), affirmed in *Same* v. *Same*, 51 CCPA 81, C.A.D. 841 (1964), the "question of whether or not there was an export value for merchandise such as or similar to that here undergoing appraisement depends, therefore, upon the existence of sales in the ordinary course of trade at prices which fairly reflect the market value of the merchandise." In that case, prices on sales in the ordinary course of trade in the foreign market, but for domestic consumption, were held to be an appropriate measure of whether the prices paid by the selected purchaser for export to the United States fairly reflected market value in the country of export.

The court in *Acme, supra,* went even further and stated that "all sales in the ordinary course of trade are proper for consideration in ascertaining the price which fairly reflects the market value of the merchandise * * *." See, generally, *Myerson Tooth Corporation* v. *United States*, 64 Cust. Ct. 860, A.R.D. 273 (1970).

Plaintiffs have thus failed to show that the sales made by the three mills to I.W.I. fairly reflected the market value of the involved prefinished plywood. The close interrelationship between I.W.I. and Findlay Millar, and the arrangement whereby Taggat was allowed to establish the sales price for the two mills, places the burden on the plaintiffs to do more than merely offer evidence of their own transactions where there is evidence available of what others in the foreign market place are charging for such or similar merchandise.

I find as facts upon the record presented:

1. That the merchandise involved in these consolidated appeals consists of certain prefinished lauan plywood exported from the Philippines between December 16, 1966 and February 2, 1967, and entered

at the port of San Francisco by the plaintiff Judson Sheldon International Corporation for the account of the plaintiff Island Woods International.

2. That the merchandise was entered for consumption after the effective date of the Customs Simplification Act of 1956, 91 Treas. Dec. 295, T.D. 54165, and does not appear on the Final List published by the Secretary of the Treasury, 93 Treas. Dec. 14, T.D. 54521.

3. That said merchandise was appraised on the basis of constructed value, as that value is defined in section 402(d) of the Tariff Act of 1930, as amended by the Customs Simplification Act of 1956.

4. That during the period involved herein said merchandise was sold for exportation to the United States to the plaintiff-importer, Island Woods International, a selected purchaser at wholesale, and a related person, without restrictions as to the disposition or use of the merchandise.

5. That the record fails to establish that the selling prices for exportation to the United States of the subject merchandise "fairly reflect the market value" of the merchandise.

6. That an amount representing a 1 percent buying commission was included in the appraised value of the imported merchandise.

I therefore conclude as matters of law:

1. That the evidence does not overcome the presumption of correctness attaching to the appraised valuations.

2. That constructed value, as that value is defined in section 402(d) of the Tariff Act of 1930, as amended by the Customs Simplification Act of 1956, is the proper basis for the determination of the value of the merchandise herein.

3. That such values are the appraised values less the 1 percent buying commissions erroneously added to the constructed values.

Judgment will be entered accordingly.